IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | |
|---|---|
| ROGER THORSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| CHRISTOPHER EPPS, Commissioner ) | Civil Action No. 4:08-CV-00129-WAP-DAS |
| of the Mississippi Department of ) | |
| Corrections, LAWRENCE KELLY, ) | |
| Superintendent of the Mississippi State ) | |
| Penitentiary at Parchman, and JOHN ) | |
| DOES 1-50 ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO THE STATE'S MOTION TO DISMISS**

The Defendants, Christopher Epps and Lawrence Kelly (collectively the "State") did not file a motion to dismiss; the State filed a motion requesting that the Court try this case without discovery, without granting the Plaintiff the right to challenge the self-serving allegations and "facts" presented by the Sate, and without considering any of the facts alleged in the Complaint as true. In sum, the State's entire memorandum in support of its motion to dismiss (referred to as the "Motion") is an attack on the facts alleged in the Complaint. The State takes nothing as true, and argues instead for its own version of "the facts." The State makes no effort to demonstrate how the Complaint fails to state a claim upon which relief can be granted and its motion to dismiss should be denied.

**I.   THE COMPLAINT**

This is an action for equitable and injunctive relief pursuant to 42 U.S.C. § 1983. The Plaintiff has been sentenced to death by lethal injection by the State of Mississippi. (Complaint ¶ 10) As alleged in the Complaint, the lethal injection protocol of the State of Mississippi

CENTRAL\31026877.1



currently provides for untrained personnel to administer a sedative known as sodium pentothal to cause the condemned to become unconscious. (*See id.* at ¶ 17) Once the condemned is unconscious, he is administered a paralytic agent known as Pavulon to stop his breathing. (*See id.*). Once paralyzed, potassium chloride, a common chemical fertilizer, is injected into the condemned to cause cardiac arrest. (*See id.*)

The Plaintiff is currently taking multiple prescription medicines which are prescribed and provided by the State of Mississippi. (*Id.* ¶ 5) The protocol for lethal injection, as it currently stands, will not allow the executioners to consider the effect these medications have on the lethal injection protocol – in particular, the fact that the Plaintiff is unlikely to be properly sedated before he is suffocated and injected with chemical fertilizer. (*Id.* ¶ 6) The necessary and highly likely effect of the insufficient protocol will be to subject the Plaintiff to a painful and horrific death by torture. (*Id.* at ¶¶ 6-7) The Plaintiff asks that the state of Mississippi adopt a protocol sufficient to address his medical circumstances and reduce the risk of a violent and excruciating death. The State has moved to dismiss the Complaint for failure to state a claim.

## II.    THE STANDARD FOR A RULE 12(B)(6) MOTION

### A.    The State Cannot Satisfy the Standards of Rule 12(b)(6)

The State utterly fails to show why the Plaintiff's Complaint should be dismissed and its Motion should be denied. Motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are viewed with disfavor and are rarely granted. *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). When evaluating a Rule 12(b)(6) motion to dismiss, the court is obligated to accept all allegations in the complaint as true and to view them in the light most favorable to the plaintiff. *See Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). The plaintiff need only "'plead enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205



(5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). "'Factual allegations must be enough to raise a right to relief above the speculative level, <u>on the assumption that all the allegations in the complaint are true - even if doubtful in fact</u>.'" *Id.* (emphasis added). The State's motion does not even approach this high standard.

**B.     The State's Motion Should Not be Converted Into A Motion For Summary Judgment**

At its core, the State's motion is really a motion for summary judgment, albeit one that does not present competent evidence. Courts in this District have held that such a motion is improper at this stage of the pleadings. *See, e.g., Fit Express, Inc. v. Circuit Total Fitness*, No. 1:07cv62-SA-JAD, 2008 WL 4450290, *2 (Sept. 29, 2008, N.D. Miss) (Aycock, J.) ("A grant of summary judgment is premature and improper when basic discovery has not been completed.") The State should not be permitted to bypass the "formality" of actually presenting evidence by simply insisting that its version of the truth is correct. The State has not presented the executioners for examination. The State has not provided any foundation for the document it claims is the Mississippi lethal injection protocol. The State has not explained how it will address the unique medical needs of the Plaintiff. The State has not done anything other than disagree with the Plaintiff.

The Court has discretion whether to accept the submission of any material beyond the pleadings. *See, e.g., Curry v. Shaw*, No. 4:06CV45-P-B, 2007 WL 670962 (Feb 28, 2007, N.D. Miss.) (Pepper, J.) (refusing to consider extrinsic evidence). The Court should not consider the self-serving affidavit presented by the State or the document it claims is the Mississippi state lethal injection protocol. Remarkably, the State attached an affidavit prepared for a different case – which the Plaintiff has had no opportunity to rebut. This affidavit, among other things, makes unsupported hearsay claims about the experience and knowledge of unidentified non-

CENTRAL\31026877.1                                3



affiants. (*See* Motion, Ex. B). Additionally, the State attached, without any authentication or foundation, a copy of what it alleges to be the Mississippi lethal injection protocol. (Motion, Ex. A). Neither of these documents constitutes "competent evidence" and should be disregarded. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991) (evidence not admissible at trial is not competent evidence and should not be considered during summary judgment).

Even if the Court decides to convert the State's motion into a motion for summary judgment, it should still be denied. Aside from the fact that such a motion is improper at this early stage, *see Fit Express, Inc.*, 2008 WL 4450290 at *2, when converting a Rule 12(b)(6) motion into a motion for summary judgment, the court must still follow the requirements of Rule 56. *See Estate of Smith v. Tarrant County Hosp. Dist.*, 691 F.2d 207, 208 (5th Cir. 1982) (reviewing *sua sponte* grant of summary judgment through the standards set forth in Rule 56). Importantly, the court must provide notice to prevent surprise to the non-moving party. *See Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991). These safeguards prevent the use of summary judgment to prematurely cut-off discovery. *See Clark v. Tarrant County, TX*, 798 F.2d 736, 746 (5th Cir. 1986); *see also Moeller v. Weber*, No. 04-4200, 2008 WL 1957842 (May 2, 2008, D.S.D.) (holding that discovery was required to determine the training requirements of South Dakota lethal injection protocol). Therefore, should the Court consider converting the State's motion into a motion for summary judgment, despite the fact that the State has presented no competent evidence, the Plaintiff requests that proper notice be given so the Plaintiff may move pursuant to Rule 56(f) to conduct discovery and present its evidence in opposition to the State's assertions.[1]

---

[1] Plaintiff intends to develop, at minimum, testimony from medical experts regarding the fact that the medications taken by Plaintiff effect how his body metabolizes sodium pentothal. Consequently, the necessary dose required for complete anesthesia is different in the Plaintiff

CENTRAL\31026877.1                           4



### III. THE STATE'S EXTENSIVE RELIANCE ON *BAZE* AND *WALKER* IS MISPLACED

The State devotes nearly its entire memorandum to an argument that the opinions issued in *Baze v. Rees*, __ U.S. __, 128 S. Ct. 1520 (2008) (plurality) and *Walker v. Epps*, No. 08-70028, 2008 WL 2796878 (5th Cir. 2008), control the outcome of this case. (Motion, *passim*) The State's reliance is both misplaced and deceptive. Neither *Baze* nor *Walker* are applicable to the question before this Court – *to wit*: is the Plaintiff entitled to offer evidence to support his claim? The questions before the *Baze* and *Walker* courts were entirely different procedurally and legally.

#### A. A Fundamental Premise Underlying *Baze* is a Complete Factual Record

The State would have this Court believe that *Baze* has forever closed the door to any challenge to a lethal injection procedure. The State's position ignores the procedural posture in *Baze*. The very first paragraph of the *Baze* Opinion reveals why it is inapplicable to this matter. "Petitioners in this case – each convicted of double homicide – acknowledge that the lethal injection procedure, if applied as intended, will result in a humane death." *Baze*, 128 S.Ct. at 1526. In this case, Plaintiff makes no such concession. Rather, the Plaintiff alleges, among other things, that the procedure, if applied as intended, will *not* result in humane death because Plaintiff is taking medications that will affect the way his body metabolizes sodium pentothal. (Complaint ¶¶ 47-49, 51, 52, 57)

Additionally, the State attempts to employ *Baze* as a shortcut to avoid discovery and a trial. The State desperately seeks to avoid developing a record, and thus relies upon *Baze*, which addresses a completely different matter with different issues. Moreover, with respect to those different issues, a full record was exhaustively developed. As Chief Justice Roberts explained in

---

than for a normal man of his size. The Plaintiff will present further evidence that the State's



the Court's plurality decision, "[t]he trial court held extensive hearings and entered detailed Findings of Fact and Conclusions of Law." *Id.* (emphasis added) The trial court conducted a 7-day trial and received the testimony of approximately 20 witnesses, including numerous experts. *Id.* at 1529. Only after this extensive factual development did the trial court find that there was a minimal risk of improper administration of the protocol at issue. *Id.* The Court plurality made its decision after applying the proper legal standards to the actual facts of the case. *Id.* at 1532. The Court relied upon the expert testimony presented by the State. *Id.* at 1533. The Court cited the specific training required by Kentucky protocol at issue. *Id.* at 1534. None of these facts have been adduced in this case.

    The plurality in *Baze* reached a conclusion after considering the extensive factual record. The Court plurality specifically found that it was the redundant measures mandated by the Kentucky protocol that ensured the sodium pentothal would be delivered in a sufficient dose before other drugs are administered. *Id.* The Court specifically relied on the multiple safeguards required by the protocol. *Id.* The Court also specifically "reemphasized" the fact that its Opinion that the Kentucky lethal injection protocol was Constitutional presupposed the fact that sodium pentothal was properly administered. *Id.* at 1536. One of the primary thrusts of the Complaint here is that the Mississippi execution protocol does not set forth the constitutional procedure for administering sodium pentothal to a medicated prisoner. (Complaint ¶¶ 47-49, 51, 52, 57)

    In this case, there has been no competent evidence presented and no record developed. The Plaintiff alleges a substantial risk of improper administration due to his unique circumstances – specifically that he is required to take numerous medications. (Complaint ¶ 5)

---

executioners are not properly trained or instructed with respect to such a situation.



Additional significant differences set forth in the *Baze* case include:

- Kentucky's lethal injection protocol requires a physician to be present to revive the prisoner in the event of a last minute stay. 128 S.Ct. at 1528;

- Kentucky's protocol requires two sets of lethal injection drugs to be prepared as backup. *Id.* at 1533;

- Kentucky's protocol requires the warden to redirect flow to backup IV lines if the prisoner does not lose consciousness within 60 seconds. *Id.* at 1534.

These are all distinguishing characteristics of Kentucky's protocol and the *Baze* case which are not part of the Mississippi protocol. The Plaintiff here alleges the State of Mississippi has no protocol in place to ensure the proper administration of sodium pentothal to an inmate who is taking an array of prescribed metabolically active drugs. (Complaint ¶¶ 5-7) *Baze* offers no insight into these allegations, particularly before a record is developed, and the State's reliance upon it should be rejected.

    **B.**    **The *Walker* Court Addressed a Different Issue Under a Different Standard**

As with *Baze*, the State relies heavily upon *Walker*. The *Walker* court ruled on an emergency application for an injunction and/or stay. *Walker*, No. 08-70028, 2008 WL 2796878, *2 (July 21, 2008, 5th Cir.) ("It is solely Bishop's emergency application that is before us now.")

In *Walker*, the plaintiff carried the burden of presenting a substantial case on the merits and show that the balance of the equities weighs heavily in favor of granting the stay. *See id.* at *3. Despite these requirements, in his application, the plaintiff there never addressed the actual merits of his case – which the court held was necessary to prove the essential element of irreparable harm. *See id.* Accordingly, the plaintiff in *Walker* was denied relief, not because he could never <u>prove</u> he was entitled to relief; but because, when he needed to, he did not <u>allege</u>



why he was entitled to relief. *Id.* ("In his stay application, [plaintiff] has made no such showing.") In other words, the plaintiff, in his pleadings, did not explain how the State would cause him irreparable harm. Furthermore, the plaintiff did not even address two of the factors he was required to plead in order to obtain relief. *Id.*

The State erroneously, and misleadingly, claims that the *Walker* court "found" that "Mississippi's lethal injection protocol to be substantially similar to that of Kentucky and therefore constitutional." (Motion p. 4) This proposition is a blatant misstatement of the case. This reckless assertion stems from a single sentence in reference to the requirement that the plaintiff explain how Mississippi's protocol will cause him irreparable harm – and it is not finding. A "finding" or a "finding of fact" is defined as "[a] determination by a judge, jury, or administrative agency of a fact supported by the evidence in the record…" BLACK'S LAW DICTIONARY 646 (7th ed. 1999). The *Walker* court made no "finding" in its opinion. It couldn't. There was no factual record before the court from which it could "find" anything. *See Walker*, 2008 WL 2796878, at *1 (the court was ruling on the appeal of an order granting a motion to dismiss.) Rather, in passing, and without citation, the court noted that the two protocols "appeared" to be similar. *Id.* at *3. At no point did the court examine the two protocols and compare them. At no point did the court examine evidence in the record to confirm that the "appearance" was accurate. At no point did the court examine evidence to determine whether the two protocols were actually similar let alone whether either protocol addressed the needs of an inmate who was taking multiple prescription medications. In short, *Walker* absolutely does not stand for the proposition that Mississippi's lethal injection protocol is interchangeable with that of Kentucky.



To the contrary, as Justice King explains in his dissent, the plaintiff presented evidence in his related case to support the argument that Mississippi's protocol presented a demonstrated risk of severe pain. *Id.* at 5 (pointing out that the merits of the case were never even reached as it was decided on procedural grounds). At the end of the day, *Walker*, stands for nothing more than the legal standards which must be met to be granted a stay of execution pending resolution of a complaint brought pursuant to 42 U.S.C. § 1983. It certainly does not stand for the factual and legal conclusion that Mississippi's protocol for lethal injection is the same as Kentucky's or that it is presumptively constitutional in every instance. *Walker* does not preclude the plaintiff in this case from presenting evidence in support of his claims.

## IV.    THE COMPLAINT ALLEGES A VIABLE CAUSE OF ACTION

The State's motion relies almost exclusively on *Walker*, 2008 WL 2796878 and on *Baze*, 128 S. Ct. 1520, in wrongfully arguing that any challenge to Mississippi's lethal injection protocol is foreclosed. Significantly, the motion is devoid of significant references to the Complaint in <u>this</u> case. As set forth above, even a cursory review of the Complaint reveals that *Baze* and *Walker* are inapposite to these facts.

In this case, the Plaintiff has filed a timely[2] Complaint seeking relief under 42 U.S.C. § 1983 for impending violations of his constitutional rights. The Complaint is rife with factual allegations supporting the Plaintiff's right to relief. The Complaint alleges, *inter alia*, the following facts:

---

[2]   In a stunning display of reckless indifference to its own arguments, the State complains, on the one hand, that the Complaint was filed "on the last day before the statute of limitations … was to have run." (Motion p. 1) (Although the Plaintiff disagrees with the State's interpretation of the statute of limitations). Later in the very same brief, apparently forgetting its concern that the Complaint was filed just before the statute of limitations expired, the State complains that the Complaint is not yet ripe. (Motion p. 15 n. 8) Apparently, the State is of the opinion that it can avoid constitutional challenges to a sentence of death by waiting until the statute of limitations has run to set an execution date.



- The Mississippi protocol was adopted without medical research or review (Complaint ¶ 18);

- No peer reviewed journal has published research supporting the State's contention that the manner of execution is humane (*Id.*);

- The only scientific journal articles on the topic support the contention that this protocol presents a high likelihood of death by torture (*Id.* at ¶ 19);

- The protocol lacks medically necessary safeguards (*Id.* at ¶ 21);

- There are no procedures in place to follow when the condemned is taking drugs which will interact with the drugs used in execution (*Id.* at ¶ 22);

- The protocol does not establish minimum qualifications or expertise required of the personnel who perform the tasks in the lethal injection process (*Id.* at ¶ 23);

- The use of sodium pentothal by non-medically trained personnel creates a high likelihood of inadequate sedation (*Id.* at ¶¶ 24-25);

- There is no need for Pancuronium bromide and it creates a likelihood of death by asphyxiation (*Id.* at ¶¶ 26-29);

- The protocol does not establish the proper timing of the administration of the three drugs which is an essential requirement for proper administration (*Id.* at ¶37);

- The protocol does not provide any direction for use with prisoners who are taking other drugs (*Id.* at ¶ 38);

- The Mississippi protocol does not contain the safeguards required by the American Veterinary Medical Association (*Id.* at ¶ 44);



- The protocol does not address the prisoner's medical condition and history, and several regularly prescribed drugs at Mississippi State Penitentiary at Parchman interfere with the ability of sodium pentothal to act properly as an anesthetic (*Id.* at ¶ 46);

- The Plaintiff has been taking an array of medication for a period of many years and the executioner will not know to what extent these drugs will interfere in the execution process (*Id.* at 47);

- The protocol does not require a back-up syringe of sodium pentothal in the event the preliminary dose is insufficient (*Id.* at ¶ 51).

In sum, Plaintiff alleges numerous facts, which if true, would entitle him to relief. Simply put, Plaintiff alleges that the State is going to use improperly trained individuals to follow an insufficient execution procedure resulting in a slow and tortuous death.

A.  **The State Cannot Defeat The Allegation That The Executioners Are Untrained**

The State cannot defeat the Plaintiff's allegation that the executioners are not properly trained. The Complaint very specifically alleges that the Mississippi protocol does not provide for minimum training for executioners. (*See, e.g.,* Complaint ¶ 16, 23) Rather than explain how this allegation is irrelevant to the Plaintiff's claim, the State simply disagrees. (Motion p. 6) ("the paramedics on the MDOC execution team have over twenty years of experience.") The State's assurances are unavailing. The State has done nothing more than use hearsay to allege a fact that is of no consequence. The State cleverly attempts to replace the need for proper training by alleging – without competent evidence – that its team is "experienced." (Motion p. 6) It is of little import for the Plaintiff to learn that he will be executed by a team which has 20 years of practice in the wrong techniques.

CENTRAL\31026877.1                          11



In its rambling response to the straightforward allegation that a lethal injection protocol must specify training to be constitutional, the State can only complain that the Plaintiff is "speculating." (See Motion p. 8) Nonsense. The State has supposedly attached the relevant protocol to its Motion – albeit improperly – and the "protocol" makes no mention of backup syringes of sodium pentothal. (See Motion at Ex. A) The improper affidavit attached to the Motion is similarly devoid of any "facts" to contradict this allegation. (See Motion at Ex. B) The State's feeble response only underscores the need to develop a proper record.

When challenged with the allegation that Mississippi does not monitor anesthetic depth and that untrained personnel prepare the chemicals – the State does not attempt to defend Mississippi's protocol. Rather, the State argues that Kentucky does it properly. (Motion p. 8) (citing *Baze* – for 2 pages). The State even goes so far as to practice medicine and opine that a two (2) gram injection of sodium pentothal is proper administration of the drug to an inmate who is taking numerous other drugs. (See Motion p. 10-11) Again, the State relies on the *Baze* analysis of Kentucky protocol – which makes no mention of the dose used in Kentucky. (*Id.*) The State also points to the decision in *Nooner v. Norris*, No. 5:06-CV-001100 SWW, 2007 WL 2710094 (Sept. 11, 2007, E.D. Ark.) to support its factual assertion that two grams is sufficient. (*Id.*) However, *Nooner* does not address how many grams are required for an inmate on other medications. Similarly, the Arkansas protocol at issue in *Nooner* is substantially different from the alleged protocol produced by the State. By way of example and not limitation, Arkansas requires three (3) grams of sodium pentothal as the primary drug and three (3) grams for back up. *Nooner*, 2007 WL 270094, at *3. Lastly, *Nooner*, like *Walker*, was an action for an emergency stay being decided under a completely different legal standard. *Id.* at *1.



Ultimately, it is irrelevant what Kentucky requires for lethal injection. It is similarly irrelevant what Arkansas requires for lethal injection. What matters for this Court is what Mississippi requires for lethal injection. At this stage of the case, there is no evidence to rebut the allegation that the Mississippi lethal injection protocol requires trained professionals to perform the procedure, and the Plaintiff is entitled to proceed with his claims.

  B. **The State Cannot Defeat the Allegation That The Mississippi Protocol Unconstitutionally Omits Any Time-Frame For Administrating The Lethal Drugs**

The State argues that the Plaintiff has presented a "specious" argument by alleging that the Mississippi protocol does not specify the timing of the injections of the chemicals. (Motion p. 12) True to form, the State cites to *Walker* in support of its argument. (*Id.*) Again, it is the State's argument that is specious. *Walker* makes no finding whatsoever regarding Mississippi's lethal injection protocol. Interestingly, despite the fact that it went through the effort of attaching what it claims to be the Mississippi protocol to its motion, and of attaching an affidavit prepared for a different case, the State cannot point to where the timing is set forth in the protocol. The State cannot point to this information because it is not there – just as alleged in the Complaint.

  C. **The State Cannot Defeat The Allegation That The Mississippi Protocol Does Not Make Any Consideration For Other Medications**

The State of Mississippi prescribes numerous medications for the Plaintiff and these medications will affect the administration of the lethal injection drugs. The State's only response to this well pleaded fact is the snide statement that the Plaintiff has presented "no support whatsoever for this argument." (Motion p. 12) As the State well-knows, the time to present "support" for allegations pled in a complaint is during the fact-finding phase of trial – not at the pleading stage. The State asks for support, and the Plaintiff is happy to provide it – following the opportunity to complete discovery and develop a fair record. Whether the State likes it or not,

CENTRAL\31026877.1            13



the fact remains, only a properly-trained anesthesiologist can properly prescribe and administer anesthesia such as sodium pentothal to an individual taking these medications. (Complaint ¶ 22, 24, 25)  In response to this allegation, the State complains that it will be unable to execute the Plaintiff if it must consider his unique medical needs. (*See* Motion p.12 n. 7)  But there are many ways which the State could consider the contingency presented by the Plaintiff – including developing a protocol which considers the medications of the condemned.  It is not for the Plaintiff to solve the State's problem and develop a Constitutional means for his own execution.

### D.   The State Can Not Defeat The Allegation That The Mississippi Protocol Unconstitutionally Mandates the Use of Pavulon

Not surprisingly, to defend the use of Pavulon in Mississippi lethal injection protocol, the State turns to Kentucky and *Baze*. (Motion p. 13)  Again the State erroneously claims that the *Walker* court has "found" the Mississippi protocol to be the same as Kentucky's. (*Id.*)  Of course, these arguments also lack merit.  The Complaint sets forth allegations that the Plaintiff's unique medical needs coupled with the lack of training and procedures used in the execution process creates a substantial risk of torture through the use of Pavulon. (Complaint ¶ 46-49)  Neither *Baze* nor *Walker* addressed this issue.  In <u>this</u> case, there is no factual record yet.  All that is before the Court are the allegations of the Plaintiff, which must be construed in his favor.  The Plaintiff should be entitled to present evidence to support his allegations and the State should be called to task to defend its unsupported assertions in defense of its lethal injection protocol.

## V.   THE ELEVENTH AMENDMENT DOES NOT PERMIT MISSISSIPPI TO VIOLATE THE PLAINTIFF'S RIGHTS UNDER THE UNITED STATES CONSTITUTION

The State either misunderstands or misstates the Plaintiff's argument for relief set forth in Count II of his Complaint.  The State would have this Court believe Plaintiff is seeking relief based upon a violation of Mississippi state law. (Motion p. 17)  The State is incorrect.  The



Plaintiff seeks relief based upon a deprivation of his rights guaranteed under the Fourteenth Amendment to the CONSTITUTION, U.S. CONST. amend XIV. (Complaint ¶ 62) The Plaintiff is pursuing relief through direct federal question jurisdiction based upon 42 U.S.C. § 1983.

While states retain immunity from suit in their own courts, the states' immunity is not unlimited. *Black v. North Panola School Dist.*, 461 F.3d 584, 593 (5th Cir. 2006). States cannot disregard the Constitution under the guise of the Eleventh Amendment. *Id.* Pursuant to Section 1983, Congress asserted such authority over the states which would otherwise be prohibited by the Constitution. *Id.* The Supreme Court has very clearly and unequivocally stated "the Eleventh Amendment permits suits for <u>prospective injunctive relief against state officials acting in violation of federal law</u>." *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (emphasis added) (citing *Ex parte Young*, 209 U.S. 123 (1908) (unanimously reversing the Fifth Circuit and permitting Section 1983 action against State actors for violation of consent decree).

The Plaintiff has alleged that the State's failure to follow its own law is resulting in a deprivation of his Constitutional rights. (Complaint ¶ 62) The Plaintiff does not seek to "force" the State to follow its own laws. The Plaintiff does not seek monetary relief from the State attributable to its decision to ignore its own laws. Rather, the Plaintiff seeks relief to prevent the State from violating his Constitutional rights – which is the necessary result of the State choosing to ignore its own laws. The Eleventh Amendment does not bar this action, and the State cannot hide behind the Eleventh Amendment to unconstitutionally torture the Plaintiff to death in defiance of <u>both</u> Federal <u>and</u> State law.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should deny the State's motion. In the alternative, if the Court treats the State's motion as a motion for summary judgment, the Court



should deny the motion or grant the Plaintiff reasonable time to conduct discovery as required by Federal Rule of Civil Procedure 56(f).

RESPECTFULLY SUBMITTED this 24th day of November, 2008.

**ROGER THORSON**

By:  /s/  JIM DAVIS
Jim Davis
Miss. Bar No. 5830
1904 24th Avenue
Post Office Box 1839
Gulfport, MS 39502-1839
(228) 864-1588

**OF COUNSEL:**
Daniel Brennan
Richard Klawiter
Carl H. Poedtke III
Michael C. Kasdin
**DLA Piper LLP (US)**
203 N LaSalle, Suite 1900
Chicago, Illinois 60601

**CERTIFICATE OF SERVICE**

I, JIM DAVIS, do hereby certify that I have this date served, via ECF and United States Mail, postage pre-paid, a true and correct copy of the foregoing RESPONSE to the following:

Jason Davis, Esquire
Office of the Attorney General
P.O. Box 220
Jackson, MS  39205

SO CERTIFIED this the 24th day of November, 2008.

/s/  JIM DAVIS
JIM DAVIS

